IN THE UNITED STATES DISTRICT COURT`
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATT JOHNSON, PLUMBERS & STEAMFITTERS LOCAL NO. 43 HEALTH AND WELFARE FUND, and PLUMBERS & STEAMFITTERS LOCAL NO. 43 PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>CRANE NUCLEAR PFT CORP., CHRIS MITCHELL and the TENNESSEE VALLEY AUTHORITY<br><br>Defendants. | Case No. 3:23-cv-00273<br><br>Judge Trauger |

**PLAINTIFFS' RESPONSE TO DEFENDANTS CRANE NUCLEAR PFT CORP. AND CHRIS MITCHELL'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.01(c), Plaintiffs hereby respond to Defendants Crane Nuclear PFT Corp. and Chris Mitchell's Statement of Undisputed Material Facts In Support of their Motion for Summary Judgment, Dkt. 83. Plaintiffs preserve their objections to the materiality of these statements to the parties' motions.

**TVA's Project Maintenance and Modification Agreement with the Tennessee Valley Trades and Labor Council**

1. The Project Maintenance and Modification Agreement ("PMMA") is entered into between the Tennessee Valley Authority ("TVA") and the Tennessee Value Trades and Labor Council ("Council"), which is comprised of multiple unions including the United Association of

1

Journeymen and Apprentices of Plumbing and Pipe Fitting. (**Ex. 1**, PMMA, Ex. 3 to Depo. Matt Faulkner ("Faulkner") at ii; **Ex. 6**, Faulkner Depo. 71:20-72:1.)

**RESPONSE**: Undisputed.

2. The PMMA at issue in this matter was signed in 2015 and effective through November 30, 2021, and continues year to year without notice of termination. (**Ex. 1**, Art. XXVII, at 30; Art. XXVI at 26.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendant's Partial Motion for Summary Judgment only.

3. The PMMA defines "Owner" as the TVA. (**Ex. 1**, Art. XXVII, at 30.)

**RESPONSE**: Undisputed.

4. The PMMA itself, is largely a contract between the Contractor and the Council. (*Id.* at ii-iii ("This Project Agreement is entered into between the signatory Contractor and the Unions comprising the . . . Council . . . for the covered project . . . It is, therefore, **AGREED** by the undersigned Contractor and Council Unions in consideration of the mutual promises and covenants contained herein that the Project Agreement be made as follows….")) (emphasis in the original).

**RESPONSE**: It is undisputed that these are accurate quotes from the PMMA.

5. Article V defines the scope of the PMMA's coverage as:

2

> 1. This Agreement covers only that maintenance and modifications work assigned by the owner to the Contractor and performed by the employees of the Contractors covered by this Agreement.
>
> 2. This Agreement does not cover work classified as specialty work as defined by the Owner.

(**Ex. 1**, Art. V (1), at 9).

**RESPONSE**: It is undisputed that these are accurate quotes from the PMMA.

6. Under the PMMA, TVA has the sole discretionary authority to label work as "specialty work." (**Ex. 1**, Art. V (2), at 9; **Ex. 2**, Depo. of Will Trumm ("Trumm Depo.") at 20:17-19; 65:9-13.)

**RESPONSE**: It is undisputed that TVA has the sole authority to designate a contract as specialty work. However, Plaintiffs dispute that TVA has sole discretionary authority to interpret whether work constitutes specialty work, as such decisionmaking is subject to a dispute resolution process. *See* Plts' Exhibit 3, PMMA, Article XXVII.

7. The PMMA defines "specialty work" as:

> work not normally performed by a General Contractor and requiring specialized knowledge, skills, or equipment operation not normally possessed by the craft and referable out of the Union halls. Specialty work would include Contractors who utilize special technique or process to perform what would otherwise be non-specialty work; such special technique or process must be clearly shown to result in a benefit to work efficiency, schedule, or worker health and safety. TVA will work with the Council to assist in training which will result in the development of such specialized skills with the work force.

(**Ex. 1**, Art. VI (2), at 10.)

**RESPONSE**: It is undisputed that these are accurate quotes from the PMMA.

8. There is nothing in the PMMA requiring that notice to the Council of TVA's designation of work as "specialty work" be written. (**Ex. 2**, Trumm Depo. 23:21-15; 33:18-24; **Ex. 1**, PMMA.)

**RESPONSE**: Undisputed.

9. The PMMA establishes wage rates and benefits packages for work performed under the Agreement:

> Wage rates for work performed by laborers and mechanics under this Agreement are set out in Exhibit A and Exhibit C which lists the total rate for each classification, consisting of a basic wage rate, contributions to pension and health and welfare funds, and any applicable travel or subsistence allowances.

(**Ex. 1**, Art. XII, at 15.)

**RESPONSE**: Undisputed.

10. The PMMA also requires that contractors and covered subcontractors "shall make health and welfare and pension trust fund contributions to the applicable fund, identified by the Council . . . ." (**Ex. 1**, Art. XXI at 15.)

**RESPONSE**: Undisputed.

11. Article XXVII, called "Agreement Between TVA (Owner) and Council Regarding Covered Maintenance and Modification Work" provides that although TVA agrees the PMMA "governs the respective rights and obligations of the Contractor and Council covering the Contractor's employees," the "TVA does not assume the rights, obligations, or liabilities of any Contractor or the Council under this Agreement." (**Ex. 1**, Art. XXVII at 26.)

**RESPONSE**: It is undisputed that these are accurate quotes from the PMMA.

12. Although TVA and the Council agreed that there would be no "joint employer status between or among the Owner or any Contractor. . .", TVA itself agreed to certain provisions in Article XXVII of the PMMA. (**Ex. 1**, Art. XXVII at 27.)

**RESPONSE**: Undisputed.

13. The PMMA provides:

> TVA and the [Council] agree that each contract in excess of $250,000 for TVA's Fossil, Nuclear, and Hydro organizations or $350,000 for all other TVA organizations for work involving the maintenance or modification of TVA facilities and which requires the employment of laborers and mechanics in such work shall contain a provision requiring the Contractor to become signatory to [the PMMA]. This requirement shall apply only to that maintenance and modification contract work which falls within the scope of work and definitions outlined in Articles V and VI and does not apply to Specialty Contracts as defined in Article VI of this [PMMA].
>
> This Agreement does not cover contracts in amounts of $250,000 or less for TVA's Fossil, Nuclear, and Hyrdo organizations or $350,000 for all other TVA organizations, in part to ensure that businesses within the TVA power service area and small, disadvantaged, minority-or women-owned businesses shall have enhanced opportunity to compete for and be awarded such contracts.
>
> Disputes regarding the applicability of this Section 2 shall be handled as follows:
>
> If TVA determines that a particular contract which otherwise would be covered by this Project Agreement is excepted from coverage under this section, it shall notify the Council before the contract is awarded. Any Council disputes regarding this determination must be received by a person designated by TVA within three workdays of the Council's receipt of notification. If TVA and the Council cannot resolve this dispute, the Council may appeal the dispute to an arbitrator, who is jointly selected by TVA and the Council, and who serves for an appointed term of one year, but subject to removal by either party upon 30 days' notice. Such appeal must be made within five workdays of TVA's receipt of the Council's initial dispute.

(**Ex. 1**, Art. XXVII (2) at 27-28.)

**RESPONSE**: It is undisputed that these are accurate quotes from the PMMA.

14. The PMMA also does not provide any remedy to the Council (or anyone else) if TVA fails to provide such notice. (**Ex. 1**, Art. XXVII at 27-28.)

**RESPONSE**: No such remedy is contained in the PMMA and none is necessary, because TVA's failure to provide notice as proscribed by Article XXVII means that the contract in question is not a specialty contract.

15. The PMMA does not provide that if notice is not given then the TVA's "specialty work" designation is invalid. (*See generally* **Ex. 1**, PMMA at 9, 27-28.)

**RESPONSE**: Disputed. *See* Plts' Exhibit 3, PMMA, Article XXVII(2) ("….it *shall* notify the Council before the contract is awarded") (emphasis added).

**TVA Designates Certain Nuclear Valve Work as "Specialty Work" Pursuant to the PMMA**

16. In 2018 and 2019, TVA experienced several nuclear outages in which members of Local 43 of the United Association of Journeymen and Apprentices of Plumbing and Pipe Fitting ("Local 43") performed valve work poorly. (**Ex. 2**, Trumm Depo. 20:17-25.)

**RESPONSE:** Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

17. TVA lost several million dollars because of Local 43 members' lack of efficiency and proficiency in performing the work. (*Id.*)

6

**RESPONSE:** Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

18. Local 43's performance raised serious safety concerns for TVA employees, on-site contractors, and the community given the work involved ensuring that the nuclear valves were sealed and working properly. (*Id.* at 21:3-15.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

19. Ultimately, TVA determined that the work involved in the modification and maintenance of nuclear valves would be "specialty work" under the PMMA. (**Ex. 2**, Trumm Depo. 21:16-21.)

**RESPONSE:** It is undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only that "TVA notified the Council in either 2018 or 2019 that it did not believe Local 43's members had sufficient training to perform valve work at TVA." *See* TVA Statement of Fact #18, Dkt. 79. Plaintiffs dispute that this notice is sufficient to deem the work specialty work under the PMMA, as is the basis of Plaintiffs' Partial Motion for Summary Judgment generally.

20. More specifically, TVA considered that the nuclear valve work required special skills and certain qualifications that the Local 43's craft personnel did not have. (*Id.*)

7

**RESPONSE**: It is undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only that "TVA notified the Council in either 2018 or 2019 that it did not believe Local 43's members had sufficient training to perform valve work at TVA." *See* TVA Statement of Fact #18, Dkt. 79.

21. TVA informed the Council verbally that this nuclear valve work was now "specialty work" under the PMMA. (**Ex. 2**, Trumm Depo. 23:21-24:15; 33:18-24; 34:3-5.)

**RESPONSE**: *See* Response to Statement of Fact #19 above.

22. Will Trumm, TVA's current Vice President of Labor Relations, Safety, and Workforce Development, spoke directly to multiple Council administrators over the years, including prior to the award of the contract to Crane, that nuclear valve work would be specialty work. (**Ex. 2**, Trumm Depo. 8:7-10; 27:7-8; 42:21-43:7.)

**RESPONSE**: *See* Response to Statement of Fact #19 above.

23. The Council never initiated the dispute resolution in Article XXVII, Section 2 concerning TVA's designation of nuclear valve work as "specialty work." (**Ex. 2**, Trumm. Depo. 24:23-25:20; 29.)[1]

**RESPONSE**: It is undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only that the Council did not seek arbitration in 2018 or 2019 related to valve work.

---

[1] There is a dispute among the parties as to whether the provisions of Article XXVII apply to the instant matter; however, this dispute is not material for purposes of summary judgment, as explained more thoroughly in Defendants' Partial Motion for Summary Judgment.

24. In a letter from the President of the Council to TVA in 2020, the Council acknowledged the Local's past failures and created a plan to train their members to perform the specialty work with the requisite skill, efficiency, and proficiency. (**Ex. 4**, Letter from Mark McManus; Ex. 6 to Faulkner Depo; **Ex. 6**, Faulkner Depo. 119:23-120:6.)

**RESPONSE**: Disputed. McManus was President of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("UA"). He has never been President of the Council nor had any affiliation with it to Plaintiffs' knowledge.

25. While TVA acknowledged the Local's commitment, it explained that it still had not seen any significant ability on the Local's part to teach their members to perform this type of work. (**Ex. 5**, Letter from Trumm, Ex. 7 to Faulkner Depo.; **Ex. 6**, Faulkner Depo. 129:11-23.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

26. Crane offered trainings to Local 43's members. They did not attend. (**Ex. 2**, Trumm Depo. 36:19-37:9.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

27. Just because the TVA declares work to be specialty work does not mean it cannot be performed by a union member. (**Ex. 1**, Art. VI (specialty work is work "requiring specialized knowledge, skills, or equipment operation not *normally* possessed by the craft and referable out of the Union halls") (emphasis added); **Ex. 2**, Trumm Depo. 52:18 ("specialty work doesn't mean nonunion work"); 52:25-53:2 ("just because we call something specialty doesn't mean we are saying it's . . . unable to be performed by union labor."))

**RESPONSE**: Disputed. The very nature of specialty work is that it requires skills not taught in the craft training facilities and, by definition, cannot be performed by a union member. *See* Plts' Exhibit 3, PMMA, Article VI(2).

**TVA Awards Crane a Contract for Nuclear Valve Work Designated as Specialty Work**

28. In 2021, TVA and Crane's predecessor Crane Nuclear, Inc. entered into Contract 16051. (**Ex. 3**, Contract 16051, Ex. 2 to Depo. of Faulkner; **Ex. 6**, Faulkner Depo. 22:17-23.)

**RESPONSE**: Undisputed.

29. This is the only contract at issue in this litigation. (Am. Compl. ¶ 17, ECF No. 41.)

**RESPONSE**: Disputed. See Dkt. 41, Am. Compl., ¶ 16.

30. Under Contract 16051, Crane was contracted to perform work on valves in TVA's nuclear facilities, including Sequoyah and Watts Bar. (**Ex. 3**, Contract 16051, Section 2.0(x) and 1.02(x)).

**RESPONSE**: Undisputed.

31. The scope of work includes nuclear valve refurbishment, positioner setup and calibration, strain gauge installation and calibration, diagnostic testing, inspections, cleaning, seat lapping, packing, pressure / level / flow transmitter calibration, and other maintenance at TVA nuclear sites. (**Ex. 3**, Contract 16051, Section 2.1.)

**RESPONSE**: Undisputed.

32. Crane and TVA maintain specific qualifications and training required for individuals to perform this type of nuclear valve work. (**Ex. 2**, Trumm Depo. 40:7-10.)

**RESPONSE**: Undisputed.

33. The scope of nuclear valve work is for the same type of work the TVA previously declared and has continued to declare "specialty work" under the PMMA. (**Ex. 2**, Trumm Depo. 29:19-30:2.)

**RESPONSE**: It is undisputed that BHI, Crane, and Williams have all performed the same type of valve work at TVA. Plaintiffs' dispute the characterization of TVA's designation of that work as specialty work. *See* Response to Statement of Fact #19.

34. The Council received prior notice that this type of nuclear valve work was designated by TVA as "specialty work." (**Ex. 2**, Trumm Depo. 23:12-18; 27:14-15; 28:1-6; 31:16-22.)

**RESPONSE**: Disputed. *See* Response to Statement of Fact #19.

35. Once work is declared "specialty work" that decision remains in effect until TVA determines otherwise. (**Ex. 2**, Trumm Depo. 27:22-28:6.)

**RESPONSE**: Disputed. See Plts' Exhibit 3, PMMA, Article XXVII(2) ("Specialty Contract").

36. Nevertheless, TVA provided notice of this "specialty work," declaration to each Council administrator, including the Council administrator in place when TVA awarded Crane the Contract. (**Ex. 2**, Trumm Depo. 31:12-16; 42:9-43:10.)

**RESPONSE**: It is undisputed that TVA communicated its training concerns with representations of the UA (McManus) and NABTU (Booker). Plaintiff is aware of no record evidence of TVA communicating its alleged designation with the Council administrator, past or present.

37. The union administrator of the Council knew every outage season that [Crane's specialty work] was being performed. (**Ex. 2**, Trumm Depo. 28:22-29:7).

**RESPONSE:** *See* Response to Statement of Fact #36.

38. TVA gave notice to the Council of the specialty work designation of the work Crane was performing under Contract 16501 fifteen to seventeen times before June 2021. (**Ex. 2**, Trumm Depo. at 31:20-22.)

**RESPONSE:** It is undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only that such conversations happened, but Plaintiffs' dispute that these conversations constituted effective notice under the PMMA.

12

39. Contract 16051 between TVA and Crane provides:

> Contractor and Contractor's Subcontractors shall comply with the latest version of labor provisions which are applicable to this Contract:
>
> 1. Form TVA 1851 (with Exhibit A)
> 2. Form TVA 1851 (with Exhibit S1)
> 3. Project Maintenance and Modifications Agreement (PMMA)

(**Ex. 3**, Contract 16051 at 9.1.)

**RESPONSE**: It is undisputed that these are accurate quotes from the Contract.

40. The TVA's "How to Select Wage Packages" document within Form TVA 1851 provides a chart for how Contractors and Subcontractors pick between these three options. (**Ex. 8**, Form TVA 1851.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

41. Specialty work on the maintenance and modification of existing generating plants and transmission facilities is subject to Form TVA 1851 (with Exhibit A). (**Ex. 8**, Form TVA 1851.)

**RESPONSE:** Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

13

42. Form TVA 1851 requires that contractors pay the prevailing rate of wages. But Form TVA 1851 (with Exhibit A) **does not** require any contributions to the fringe benefit funds:

> The wages and fringe payments listed in this document are the total of payments that should be made for each classification, except that monies within the wage package can be moved between wages and fringes so long as the total of the wage package remains the same.

(**Ex. 8**, Form TVA 1851, Exhibit A, p. 5, n.1A.)

**RESPONSE**: Undisputed for the purpose of ruling on Defendants' Motion for Summary Judgment only.

Respectfully submitted,

/s/ *Karla M. Campbell*
Karla M. Campbell (BPR #27132)
R. Jan Jennings (BPR #1536)
Michael C. Iadevaia (BPR #041622)
**Stranch, Jennings & Garvey, PLLC**
223 Rosa L. Parks Ave., 2nd Floor
Nashville, Tennessee 37203
Tel. (615) 254-8801
Email: kcampbell@stranchlaw.com
Email: jjennings@stranchlaw.com
Email: miadevaia@stranchlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify on December 6, 2024, the foregoing was filed electronically through the Court's CM/ECF filing system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Defendants' counsel of record as follows:

Sarah V. Belchic, BPR 37500
Sarah B. Fask, PA BPR No. 306549
Littler Mendelson, P.C.
333 Commerce Street, Suite 1450
Nashville, TN 37201
Email: sbelchic@littler.com
Email: sfask@littler.com

Cameron S. Hill
Baker, Donelson, Bearman, Caldwell
 & Berkowitz, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450-1800
Email: chill@bakerdonelson.com

Louis J. Cannon, Jr.
Cassandra L. Horton
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
100 Light Street, 19th Floor
Baltimore, MD 21202

/s/ *Karla M. Campbell*
Karla M. Campbell