IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MATT JOHNSON, PLUMBERS & )
STEAMFITTERS LOCAL NO. 43 )
HEALTH AND WELFARE FUND, and )
PLUMBERS & STEAMFITTERS LOCAL )
NO. 43 PENSION FUND, )
                                                    )    **Case No. 3:23-cv-00273**
     Plaintiffs, )
                                                    )    **Judge Trauger**
v. )
                                                    )
CRANE NUCLEAR PFT CORP., )
CHRIS MITCHELL, and the TENNESSEE )
VALLEY AUTHORITY, )
                                                    )
     Defendants. )

**RESPONSE TO PLAINTIFFS' RESPONSE TO DEFENDANT TENNESSEE
VALLEY AUTHORITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Tennessee Valley Authority ("TVA" or "Defendant") hereby submits the following Response to Plaintiffs' Response to TVA's Motion for Partial Summary Judgment.

**I.    LEGAL ARGUMENT**

**A.  Section 515 of ERISA Does Not Apply.**

Plaintiffs open their Response with a declaration that the Funds enjoy "the upper hand in [Section] 515 collection litigation." Pl. Resp. at 1. The authority on which they rely does not stand for the proposition that funds can file a "Section 515" action against any entity and automatically collect because benefit funds "have the upper hand." Yet, their Response is peppered with references to Section 515 and repeatedly characterizes this case as a mere "collection action,"[1] as

---
[1]     *See* Pl. Resp. at 1, 3, 4, 6.

1

though the Court should refrain from actual analysis to determine whether the operative labor agreement – the PMMA – *obligates Crane to contribute* to the Plaintiff benefit funds, and the PMMA does not. Indeed, Section 515 in its entirety says the following:

> Every employer **who is obligated to make contributions** to a multiemployer plan under the terms of the plan or **under the terms of a collectively bargained agreement** shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis supplied). Section 515 states the obvious: if an employer has an obligation under a labor contract to contribute to a benefit fund, it must make the contributions; if it does not do so, then the fund(s) can sue to collect the owed contributions. Plaintiffs want this Court to forget that the parties dispute whether Crane Nuclear Pft Corp. ("Crane") actually has an obligation under the PMMA to contribute to the Plaintiff Funds.

As set forth in Defendants' respective motions for partial summary judgment, and again in this Response, Crane does not have any obligation to contribute to the Funds, because the work at issue here – repair and maintenance of valves on nuclear reactors ("Nuclear Valve Work") – is exempt from the PMMA's coverage because it is "specialty work." Nothing in Section 515 gives Plaintiffs an end run around this glaring, and fatal, fact.

### B. Plaintiffs Misread the PMMA to Require Notice to the Council as a Necessary Condition to Work Being Characterized as "Specialty Work."

Plaintiffs mischaracterize one of Defendant's chief arguments, referring to it as mere "gripes with" the Tennessee Valley Trades and Labor Council (the "Council"). Pl. Resp. at 2-6. The thrust of Plaintiffs' argument is that the Funds are not bound by the Council's actions (or inactions), and for support they rely on *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. Stromberg Metal Works, Inc.*, 118 F.4th 621 (4th Cir. 2024) and *Trustees of Painters Union Deposit Fund v. Interior/Exterior Specialist Co.*, 371 F. App'x 654 (6th Cir. 2010).

In *Stromberg Metal Works*, the employer used temporary employees to perform sheet metal work, which was essentially identical to the work performed by bargaining unit employees. 118 F.4th at 625. The union filed a grievance and demanded restitution, including payments to benefit funds as required by the CBA. *Id*. The employer filed its own grievance alleging that its noncompliance with the CBA was excused. *Id*. The parties later settled both grievances; in connection with that settlement, the union agreed not to "go back against Stromberg for working dues, lost wages etc. based on the hiring of temporary workers." *Id*. at 626. The benefit funds were not party to that settlement. *Id*. The court concluded that the union's decision to settle the grievance did not affect the funds' right to file a Section 515 collection action where the CBA required fund contributions for "all employees" engaged in sheet metal work. *Id*. at 528.

In *Interior/Exterior Specialist Co.*, a union claimed that employer IES (signatory to a CBA) and employer TLG (a nonunion company) were alter ego entities in furtherance of a double-breasted operation and TLG was required to contribute to benefit funds in IES's CBA. 371 F. App'x at 656-57. The union filed a charge with the National Labor Relations Board ("NLRB"), alleging TLG had unlawfully failed to bargain with the union, and it owed benefit contributions. *Id*. at 656. The charge was settled. The court concluded that that settlement "does not bar the [f]und's alter ego claims because those parties did not agree that IES and TLG were not alter egos or that IES and TLG did not owe additional fringe benefits." *Id*. at 660. The court went on to note that the union, in any event, "probably" could not have foreclosed the fund's right to pursue an action against TLG. *Id*. (*citing Food Employers Council, Inc*., 293 NLRB 333, 334 n. 2 (1989)).

Plaintiffs either misread or mischaracterize *Stromberg Metal Works* and *Interior/Exterior Specialist Co.*, as neither case applies here. In those cases, there existed a meritorious claim that an employer was covered by a CBA. The union in each case chose to relinquish *its* rights under

the CBA. Those cases would apply if Crane had been "caught" performing work indisputably covered by the PMMA and the Council decided to look the other way. Our facts are different and fatal to Plaintiffs' action because, under the plain language of the PMMA, TVA has the sole discretion make the specialty work designation. It is then up to the Council to challenge that designation, and its failure to do so necessarily means that the work remains specialty work and outside the scope of the PMMA. Regardless of whether or what kind of notice was given to the Council, and TVA does not concede in any way that it failed to give effective notice, "specialty work" is what TVA says it is. The only thing that can change that designation is an arbitrator's award following a Council-filed grievance. Thus, the cases on which Plaintiffs rely are inapposite.

The PMMA's plain language is clear. But for an exception, the PMMA states it covers maintenance or modification work and employees performing such work must become a signatory to and follow its provisions while performing covered work. Exhibit 1, PMMA, at 1.[2] However, that requirement "shall not apply to [s]ubcontractors performing **specialty work**..." *Id*. (emphasis supplied). The PMMA explicitly carves out specialty work from its scope:

> **ARTICLE V: SCOPE OF WORK**
>
> 1. This Agreement covers only that maintenance and modifications work assigned by the Owner to the Contractor and performed by the employees of the Contractors covered by this Agreement.
>
> 2. **This Agreement does not cover work classified as specialty work as defined by the Owner [TVA]**.

Exhibit 1, PMMA, at 9 (emphasis supplied).

According to the PMMA, specialty work is "work not normally performed by a General Contractor and requiring specialized knowledge, skills, or equipment operation not normally

---

[2] References herein to "Exhibit 1" are to ECF 76-1, Exhibit 1 to TVA's Memorandum filed 11/22/2024.

possessed by the craft and referable out of the Union halls." Exhibit 1, PMMA, at 10. It gives as an example of specialty work "[c]ontractors who utilize a special technique or process to perform what would otherwise be nonspecialty work," and says that "such special technique or process must be clearly shown to result in a benefit to work efficiency, schedule, or worker health and safety." *Id*. The PMMA also requires that, if TVA determines work to be specialty work, it must "work with the Council to assist in training which will result in the development of such specialized skills with the work force." *Id*. Nowhere in these defining, threshold portions of the PMMA, which define specialty work, is TVA required to provide notice to the Council. That is, as long as work meets the above definition, it is specialty work and falls outside the PMMA's coverage.

TVA's notice obligation is confined to one area: Article XXVII, which is a dispute resolution provision. The procedure provides a mechanism for the Council to challenge what it perceives to be TVA's improper designation of specialty work:

> 2. TVA and the Tennessee Valley Trades and Labor Council agree that each contract in excess of $250,000 for TVA's Fossil, Nuclear, and Hydro organizations or $350,000 for all other TVA organizations for work involving the maintenance or modification of TVA facilities and which requires the employment of laborers and mechanics in such work shall contain a provision requiring the Contractor to become signatory to this Project Maintenance and Modification Agreement. **This requirement shall apply only to that maintenance and modification contract work which falls within the scope of work and definitions outlined in Articles V and VI and does not apply to Specialty Contracts as defined in Article VI of this Project Maintenance and Modification Agreement.**

*Id*. at 27 (emphasis supplied). The first paragraph of Article XXVII(2) plainly states contractors must sign and abide by the PMMA only if the work they perform "falls within the scope of work" noted in the PMMA and "does not apply to" specialty work as defined in Article VI. There is no mention of notice to the Council even here. Rather, notice to the Council is first mentioned later in Article XXVII(2), *in the context of the dispute resolution process*:

5

> Disputes regarding the applicability of this Section 2 shall be handled as follows: If TVA determines that a particular contract which otherwise would be covered by this Project Agreement is excepted from coverage under this section, it shall notify the Council before the contract is awarded. Any Council disputes regarding this determination must be received by a person designated by TVA within three workdays of the Council's receipt of notification. If TVA and the Council cannot resolve this dispute, the Council may appeal the dispute to an arbitrator, who is jointly selected by TVA and the Council, and who serves for an appointed term of one year, but subject to removal by either party upon 30 days' notice. Such appeal must be made within five workdays of TVA's receipt of the Council's initial dispute…

Exhibit 1, PMMA, at 27-28.

Plaintiffs zero in on Article XXVII(2), focus on it almost exclusively, and impermissibly try to read Article V(2) out of existence. Plaintiffs, for instance, argue that the PMMA "contemplates excepting a particular contract between TVA and a contractor, like Crane, from the CBA." It is true that Article XXVII, the dispute resolution procedure, refers to "Specialty Contracts." However, Article V(2) clearly states that the PMMA's terms do not apply to specialty *work*, as defined by TVA. Plaintiffs offer no explanation for this, instead focusing on one provision of the PMMA, and ignore the definition of specialty work in Article V, which clearly states that (1) specialty work is exempt from the PMMA, and (2) TVA defines specialty work. Notably, there is nothing in Article V about notice to the Council being a condition of TVA's ability to decide what is specialty work or to designate it as such.

Specialty work is mentioned in several places throughout the PMMA as a determination which is TVA's alone to make. The PMMA does not state, anywhere, that notice to the Council is a necessary condition of TVA's designation of work as specialty work. Plaintiffs repeatedly implore the Court to consult the plain language of the PMMA, but only to the language Plaintiffs wish to draw attention. If one reviews the plain language of the PMMA as a whole, one finds that whether TVA gives notice to the Council is relevant only to the Council's right to challenge the

6

designation in an arbitration proceeding. Put another way: specialty work is specialty work because TVA says it is, unless the Council brings a grievance to arbitration and an arbitrator concludes otherwise. That has not happened here – and so the work remains specialty work.

It is for these reasons that the Council's failure to file a grievance is fatal to the Plaintiffs' case. The Council's failure to invoke the dispute resolution procedure in Article XXVII cemented TVA's designation of Nuclear Valve Work as specialty work. Thus, the Council's conduct was not an extraneous conversation between the union and employer representatives; it was a necessary condition to a challenge of TVA's specialty work designation. The specialty work designation is to be made by TVA in its sole discretion. TVA's designation may be challenged, but only by the Council. An individual union cannot challenge it. The Plaintiff Funds cannot challenge it. The Council did not challenge the designation of Nuclear Valve Work as specialty work. Thus, Nuclear Valve Work is specialty work, and the Funds are unable to argue otherwise.

Plaintiffs attempt to excuse the Council's failure to grieve TVA's specialty work designation, positing that "if TVA never provided effective notice of its designation of the Crane contract as a 'Specialty Contract' under Article XXVII(2) of the PMMA…then the Council had no opportunity to demand arbitration." P. Resp. at 6. As discussed below, TVA did provide effective notice to the Council, many times, of the designation.

      **C.    Plaintiffs' Arguments that TVA's Notice to the Council of its Specialty Work Designation Were Ineffective are Unavailing.**

Plaintiffs allege TVA gave insufficient notice to the Council of the specialty work designation. Plaintiffs criticize TVA for not making the specialty work designation in writing, suggesting that there is a legal requirement that TVA have produced a written document: "There is no written document, as required by ERISA, that designates Crane's work as specialty work." Pl. Resp. at 5. There is no authority cited for the proposition that ERISA requires that TVA have

7

designated Nuclear Valve Work as specialty work in writing, because no such authority exists. Ironically, Plaintiffs appreciate this later in their Response, when they accuse "[b]oth TVA and Crane [of] misstat[ing] Plaintiffs' position as requiring "written" notice." Pl. Resp. at 11, fn 6. However, Plaintiffs turn right around again and "clarify" their position: "with reference to the sufficiency of TVA's alleged notice…the word 'specialty' appears in no written document between the parties." *Id*. Setting aside Plaintiffs' inconsistency on this issue, the PMMA does not require written notice, so written notice need not have been given.

Plaintiffs also claim TVA did not give sufficient oral notice, referring to such notice as "vague notice to the Council in 2018 or 2019 about the nature of valve work in general, years before TVA awarded the contract for this work to Crane." Pl. Resp. at 9. This argument fails, too. The Council and its local unions were well aware that they were unable to provide workers who could sufficiently perform Nuclear Valve Work. Indeed, TVA initially engaged a contractor, BHI, which hired workers out of the hiring hall of the United Association of Plumbers & Steamfitters, Local 43 ("Local 43") to perform Nuclear Valve Work. TVA notified the Council in either 2018 or 2019 that it did not believe Local 43's members had sufficient training to perform Nuclear Valve Work. Exhibit 2, Trumm Dep. at 26:24-29:17, 31:23-32:11.[3] As William Trumm testified, there were "several years of failed performance from…our steamfitter partners that were unable to perform the work at critical times of performing the valve work which cost TVA several millions of dollars." *Id*. at 20:21-25. Thus, Nuclear Valve Work fits the definition of specialty work in the PMMA, in that the use of a non-union contractor "result[ed] in a benefit to work efficiency, schedule, [and] worker health and safety." Exhibit 1, PMMA, at 10.

---

[3] References herein to "Exhibit 2" are to ECF 78, Exhibit 2 to TVA's Memorandum filed under seal 11/22/2024.

On one occasion when questioned during his deposition regarding the verbal notice that TVA gave to the Council, Trumm testified as follows:

> Q. So do you consider your obligation under the PMMA -- let me see if I can phrase that better. So the section on page 27 we just read in the PMMA requires TVA to give notice to the council of its having deemed or declared work specialty work. Do you consider that obligation to include giving new notice if the contractor changes but not the work itself?
>
> THE WITNESS: I'm trying to -- I'm struggling with what you're asking.
>
> BY MS. CAMPBELL:
> Q. Sure.
>
> A. So we -- I wanted to make sure we understand process here. Our union administrator knows every outage season that this work was being performed. ***So when we talk about providing the notice of specialty each time, the answer would be every time that we performed this work, the union hall and the administrative council knew the work was being performed***, at any point, could have utilized the contractual mechanism of saying, hey, we think that we should be performing said work or we would like to take it to an arbitration case, which is their right inside of our -- of our agreement. And zero times did they ever protest -- the administrative council ever protested whether or not this work was or was not specialty work. It was accepted by the administrator that this -- this specific valve work was specialty work.

Exhibit 2, Trumm Dep. at 28:7-25, 29:1-12 (emphasis added).

In claiming that TVA gave only "vague" notice to the Council that Nuclear Valve Work was specialty work, Plaintiffs completely ignore Trumm's testimony above, other examples of his deposition testimony, and the written correspondence between Trumm and representatives of the Council and Local 43. Exhibit 4, Trumm Decl. at ¶¶ 5-8,[4] Exhs. A and B. It could not have been clearer (in writing, no less) to the Council and Local 43 that union labor was unable to perform Nuclear Valve Work. The Council not only acknowledged this, but promised that Local 43 would take affirmative steps to train union members to perform the work. *Id*. Indeed, TVA (and Crane) went through great pains to provide training so that union workers would be able to do the work.

---

[4] References herein to "Exhibit 4" are to ECF 78-2, Exhibit 4 to TVA's Memorandum filed under seal 11/22/2024.

Its doing so satisfied the PMMA requirement that TVA "work with the Council to assist in training which will result in the development of such specialized skills with the work force" in a situation where union labor is unable to perform specialty work. Exhibit 1, PMMA, at 10. As Trumm testified, Crane made its training center near Atlanta available to Local 43 members to "train and get qualified" to do Nuclear Valve Work, and "we brokered a date for the steamfitters to go down to train," but "[s]adly, nobody from Local 43 ever showed up to that training." Exhibit 2 at 36:19-25, 37:1-5.

## II. CONCLUSION

The controlling, undisputed facts illustrate why the Plaintiffs' Amended Complaint must be dismissed. The Funds, relying on hyper-technical arguments grounded in neither fact nor law, are asking the Court to order Crane to pay into union-sponsored funds on behalf of work performed by employees who are not beneficiaries of the Funds. Plaintiffs claim that TVA "falsely" claims that the Funds seek a windfall. Pl. Resp. at 4, fn.2. However, that is precisely what Plaintiffs want. The Crane employees who have performed Nuclear Valve Work are not Local 43 members and are not eligible for benefits provided by any of the Funds. The fact is that the plain language of the PMMA allows TVA to determine whether work is specialty work. While it also allows the Council to grieve a specialty work determination, the Council failed to do that here, even though it is well aware that TVA is using, and has used for years, non-union workers to do Nuclear Valve Work because Local 43 members are unable to perform it.

For the reasons stated herein, Defendant respectfully requests that this Court grant its Motion for Partial Summary Judgment.

Dated: December 20, 2024.

                                                                           s/ Cameron S. Hill
Cameron S. Hill, TN BPR 017408
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Telephone: 423.209.4160
Facsimile: 423.752.9545
chill@bakerdonelson.com

Louis J. Cannon, Jr. (*pro hac vice*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street, 19th Floor
Baltimore, MD 21202
Telephone: 410.862.1348
Lcannon@bakerdonelson.com

*Counsel for Defendant Tennessee Valley Authority*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on December 20, 2024, a true and exact copy of the foregoing Response to Plaintiffs' Response to Defendant Tennessee Valley Authority's Motion for Partial Summary Judgment, and was filed using the Court's CM/ECF system and served via CM/ECF electronic notice to the following counsel of record:

Karla M. Campbell
Michael C. Iadevai
R. Jan Jennings
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue
Freedom Building Ste. 200
Nashville, TN 37203
kcampbell@stranchlaw.com
jjennings@stranchlaw.com
miadevaia@stranchlaw.com

*Counsel for Plaintiffs*

Sarah Bryan Fask
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102-1321
sfask@littler.com

*Counsel for Chris Mitchell and Crane Nuclear PFT Corp.*

Sarah Belchic
Jennifer B. Robinson
Littler Mendelson, P.C. (Nashville)
333 Commerce Street
Suite 1450
Nashville, TN 37201
sbelchic@littler.com
jenrobinson@littler.com

*Counsel for Chris Mitchell and Crane Nuclear PFT Corp.*

                                               s/ Cameron S. Hill
                                               Cameron S. Hill